IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THEODORE W. WILSON,

    Plaintiff,                         No. CIV S-02-2169 MCE KJM P

    vs.

CALIFORNIA DEPARTMENT OF CORRECTIONS, et al.,

    Defendants.                     FINDINGS AND RECOMMENDATIONS

/

        Plaintiff is a state prisoner proceeding with counsel[1] with an action for violation of civil rights under 42 U.S.C. § 1983. He alleges violation of the Eighth Amendment and medical malpractice, a state negligence claim. Defendant Segundino Obedoza's March 14, 2005 motion for summary judgment is before the court; defendant Obedoza is the only defendant remaining in this action. The court heard oral argument with respect to defendant's motion on April 27, 2005.

I. <u>Summary Judgment Standard</u>

        Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] Counsel was appointed on July 9, 2003.

1

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

II. Plaintiff's Allegations

Plaintiff alleges as follows in his second amended complaint:

11. On October 3, 2001, Plaintiff went to see [defendant] Dr. Obedoza for treatment for his eye which had been exposed to a chemical contaminant. Plaintiff complained that his right eye was burning, tearing, burning, and suffered from spasms.

>12. Dr. Obedoza asked if Plaintiff woke up with any eye problems, stating that if the eye problems were a result of exposure to a chemical it would likely affect both eyes. Dr. Obedoza stated that Plaintiff's eye problems were most likely caused by an infection. Plaintiff requested that Dr. Obedoza rinse his eye out. Dr. Obedoza refused, stating that Plaintiff's condition was because of an eye infection and he would prescribe medication for it.
>
>13. A nurse attempted to rinse Plaintiff's eye. When Dr. Obedoza saw the nurse attempting to rinse Plaintiff's eye, he demanded that she stop. Plaintiff had to rinse out his own eye after leaving the medical facility.
>
>14. Plaintiff was later given eye drops. Plaintiff's eyes continued to burn even after the use of the drops.
>
>15. Plaintiff was later treated by another doctor who determined that he had a chemical burn on his cornea. Plaintiff's treating physician stated the medication prescribed by Dr. Obedoza for Plaintiff's eye was inadequate.
>
>16. As a result of Defendant Obedoza's failure to properly treat Plaintiff's eye, plaintiff has suffered a permanent eye injury.

Am. Compl. at 2:20-3:10. For purposes of defendant's motion, defendant does not appear to challenge any of these allegations.

Plaintiff asserts that defendant Obedoza's actions violated plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, and amounted to negligence under California law. Id. at 3-4.

III. Eighth Amendment

The Eighth Amendment's prohibition of cruel and unusual punishment extends to medical care of prison inmates. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). In order to state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, a prison inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106. The nature of a defendant's responses must be such that the defendant purposefully ignores or fails to respond to a prisoner's pain or possible medical need in order for "deliberate indifference" to be established. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled in part on other grounds, WMX Technologies, Inc. v.

4

1 Miller, 104 F.3d 1133, 1136 (9th Cir. 1997). Deliberate indifference may occur when prison
2 officials deny, delay or intentionally interfere with medical treatment, or may be demonstrated by
3 the way in which prison officials provide medical care. Id. at 1059-60; cf. Hoptowit v. Ray, 682
4 F.2d 1237, 1253 (9th Cir. 1982). A showing of merely inadvertent or even negligent medical
5 care is not enough to establish a constitutional violation. Estelle, 429 U.S. at 105-06; Frost v.
6 Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998). A difference of opinion about the proper course of
7 treatment is not deliberate indifference nor does a dispute between a prisoner and prison officials
8 over the necessity for or extent of medical treatment amount to a constitutional violation. See,
9 e.g., Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004); Sanchez v. Vild, 891 F.2d 240, 242
10 (9th Cir. 1989).

11 Defendant Obedoza claims he is entitled to summary judgment on plaintiff's
12 Eighth Amendment claim because, he asserts, there is no genuine issue of material fact with
13 respect to whether Obedoza was deliberately indifferent to plaintiff's exposure to a harmful
14 chemical.

15 In evaluating defendant's motion, the court assumes the facts in plaintiff's
16 complaint are true and notes the following undisputed facts. Plaintiff was exposed to a chemical
17 called "break." Def't's Mem. P. & A. In Supp. Mot. for Summ. J. (MSJ), Ex. F at 97-98. The
18 "Material Safety Data Sheet" or "MSDS" is a publication that, among other things, provides
19 information regarding how to treat exposure to harmful chemicals. Opp'n, Ex. G at 40-41. The
20 MSDS in this case indicates that the following course of action should be followed if someone is
21 exposed to "break":

> Immediately and imperatively flush eyes with lots of running water
> for at least 15 minutes, lifting the upper and lower eyelids to ensure
> flushing of the entire surface. Prompt medical attention is
> essential.

25 Id., Ex. C. Defendant does not dispute that the proper treatment for exposure to "break" is found
26 in the MSDS. Additionally, plaintiff submits an affidavit from Dr. John D. Hofbauer, in which

Hofbauer indicates that the proper treatment for exposure to "break" is to copiously irrigate the eye for thirty minutes and until the pH level reaches 7.  Id., Ex. I (Hofbauer Decl.) at ¶ 5.  Hofbauer also claims "the eyelids need to be everted and the fornices swept with a cotton tip applicator."  Id.[2]

Prior to arriving in the medical unit, plaintiff had rinsed his eye for at least fifteen minutes.  Id., Ex. F at 98-99.  Plaintiff relayed this information to defendant.  MSJ, Ex. I at ¶ 6.  Plaintiff also told defendant he had not had any problems with his eye on that particular day before being exposed to "break."  Opp'n, Ex. F at 109.

Defendant admits he did not consult the MSDS prior to treating plaintiff.  Opp'n, Ex. G at 40:4-6.  He asserts he did not consult the MSDS because he believed plaintiff was suffering from an eye infection and not a chemical burn.  Id. at 40:20-41:6.  Nothing in the record suggests that plaintiff explained to defendant in any detail the manner in which he rinsed his eye, that is, whether plaintiff rinsed under his eye lids.  After defendant had seen plaintiff, defendant stopped Nurse Ramos from further irrigating plaintiff's eye after plaintiff complained to the nurse of continuing pain.  Id., Ex. F at 113-116.

---

[2] Defendant objects to Hofbauer's affidavit because "Hofbauer was never disclosed by plaintiff pursuant to Rule 26 of the Federal Rules of Civil Procedure (FRCP)."  Reply at 1-2.  Federal Rule of Civil Procedure 37(c)(1) provides, in pertinent part: "A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."  Defendant has not provided sufficient information for the court to sustain his Rule 26 objection.  He provides no discussion of the parties' efforts with regard to Rule 26, and whether a Rule 26 conference ever was held.  He also does not indicate whether he sought information through discovery on the identity of plaintiff's medical experts hired following the court's order of September 1, 2004, and if so whether such discovery requests were unanswered.  Defendant also objects to Hofbauer's declaration based on Rule 56(e), as lacking foundation, not "set[ting] forth such facts as would be admissible in evidence," and as making an improper legal conclusion as to the deliberate indifference of defendant's actions.  Reply at 2.  In his declaration, Hofbauer sets forth detailed information on his medical experience, and describes with specificity the information he reviewed prior to preparing his declaration.  Hofbauer Decl. ¶¶ 3-4.  His medical conclusions, thus, are based on a proper foundation.  Id. ¶¶ 5-6.  Defendant is correct, however, that Hofbauer does not have the expertise to render a legal opinion as to deliberate indifference.  Therefore, defendant's objection is sustained as to paragraph 7 of Hofbauer's declaration, but otherwise overruled.

Given this record, there is a genuine issue of material fact with respect to whether defendant was deliberately indifferent to plaintiff's right eye being exposed to a harmful chemical. Plaintiff informed defendant that he started experiencing pain in his right eye only after being exposed to "break." But defendant failed to take account of plaintiff's report in the way he provided medical care, saying simply he did not believe plaintiff's eye problems were caused by chemical exposure. Although defendant proceeded to treat plaintiff, there is evidence before the court from which a reasonable trier of fact could conclude that defendant's actions constituted deliberate indifference. Defendant declined to consult the MSDS for break; the MSDS does not say a person should not be treated for exposure to break if he feels a burning sensation in only one and not both eyes. Defendant's insisting that Nurse Ramos stop treating plaintiff's eye is unexplained. When plaintiff returned to the medical clinic the day after he visited defendant, for a follow up visit with Dr. McElroy, defendant commented that plaintiff's eye looked better, when, according to plaintiff, it actually looked worse:

> To put it in perspective, when Dr. Obedoza first examined my eye the visable [sic] portion of my sclera was about 50% red, the following day it was about 95% red and my eyelids were swollen.

Opp'n, Ex. F at 168:6-25. The competing "spins" on defendant's series of actions in response to plaintiff's chemical exposure are for the trier of fact to resolve. Defendant's motion for summary judgment with respect to plaintiff's Eighth Amendment claim should be denied.

IV. <u>Medical Malpractice</u>

With respect to plaintiff's medical malpractice claim, defendant argues, among other things, that the claim should be dismissed because the claim presents important issues of state law as yet undecided by California courts. With regard to supplemental jurisdiction, the

/////
/////
/////
/////

relevant federal statute provides, in pertinent part:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. . . .

28 U.S.C. § 1367(a). In other words, "[a] district court has jurisdiction to adjudicate a pendent state law claim if there is a substantial federal claim so related to it that they form part of the same case or controversy or arise out of a common nucleus of operative fact." United States ex rel. Hill v. Teledyne, Inc., 103 F.3d 143 (9th Cir. 1996). In determining whether claims form part of the same "case or controversy," a court looks to the elements a party needs to prove to prevail on the claims. Id.

As indicated above, to prevail on his Eighth Amendment claim, plaintiff must prove defendant's acts or omissions were sufficiently harmful to evidence deliberate indifference to serious medical needs; a showing of deliberate indifference requires proof that defendant purposefully ignored or failed to respond to plaintiff's pain or possible medical need. Estelle, 429 U.S. at 106. Plaintiff also must prove that he suffered harm as a result of defendant's deliberate indifference. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985). Under the Eighth Amendment, medical malpractice is insufficient to demonstrate deliberate indifference. Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990). To prove his medical practice claim, plaintiff needs to establish (1) duty, (2) breach, (3) causation, and (4) damages. See, e.g., Galvez v. Frields, 88 Cal. App. 4th 1410, 1420 (2d Dist. 2001). With regard to causation, plaintiff must prove within a reasonable medical probability based on competent medical testimony that defendant's negligent care caused his injury. Jones v. Ortho Pharmaceutical Corp., 163 Cal. App. 3d 396, 402-03 (2d Dist. 1985). While plaintiff's Eighth Amendment and medical malpractice claims are not completely coextensive in terms of the proof required, to the extent they are based on defendant's actions in response to plaintiff's request for

medical care, they do arise from the same "nucleus of operative fact."

However, the federal law of jurisdiction also provides that district courts may decline to exercise jurisdiction if, among other reasons, "the claim raises a novel or complex issue of State law." 28 U.S.C. § 1367(c)(1). In exercising its discretion under section 1367, a court must first identify a "factual predicate" that corresponds to a statutory basis for declining jurisdiction, and then determine "whether remanding the pendent state claims comports with the underlying objective of 'most sensibly accommodat[ing]' the values of 'economy, convenience, fairness, and comity.'" Executive Software North America, Inc. v. United States District Court (C.D. Cal.), 24 F.3d 1545, 1557 (9th Cir. 1994) (citations omitted).

As defendant's briefing makes clear, to prevail on his medical malpractice claim, plaintiff also will need to fend off defendant's argument, that the claim fails because plaintiff's sole remedy for his work-related injury is workers' compensation. MSJ at 5-7; Reply at 5-8. The resolution of this question will require examination of evidence related to whether the Department of Corrections, as plaintiff's employer with respect to his laundry job, or defendant himself assumed a separate role other than as employer in the form of defendant's treatment of his injury. See Hendy v. Losse, 54 Cal.3d 723 (1991). Such evidence is likely to include employment and workers' compensation records, and other information unrelated to the facts underlying plaintiff's Eighth Amendment claim. Thus there is a factual predicate corresponding to the novel state law basis for declining jurisdiction. Executive Software, 24 F.3d at 1557; 28 U.S.C. 1367(c)(1).

Resolution of the medical malpractice claim also will require application of California state law with respect to employment and workers' compensation. Defendant claims that the Hendy case makes clear that plaintiff's sole remedy is workers' compensation. See Hendy, 54 Cal. 3d at 740-42. Plaintiff also cites to Hendy and engages in statutory construction to argue that defendant had a separate statutory and professional duty, independent of his employment relationship with the Department of Corrections, to provide plaintiff with medical

1 care. Opp'n at 14-24; see also Cal. Labor Code §§ 3370, 3601, 3602.  Hendy, which does appear
2 to be the case most closely analogous to this one, involves the medical malpractice claim of a
3 professional football player treated by a team physician; in resolving the case, the California
4 Supreme Court held that workers' compensation provided the player's sole remedy.  Id.  Based
5 on a review of Hendy, the other cases cited by both parties, as well as this court's independent
6 research, it is apparent that California courts have not yet addressed, either directly or through
7 consideration of facts more closely analogous than those in Hendy, the precise question raised by
8 this case: whether an inmate, with more limited choices than a professional ball player, who is
9 injured while working at his prison job and then alleges injury at the hands of a doctor employed
10 by the Department of Corrections can maintain a malpractice action against the doctor or is
11 confined to seeking relief under the workers' compensation laws.  This part of plaintiff's
12 complaint raises novel and complex issues of California law, as indicated by the parties' briefing
13 on the question.  While a modicum of judicial economy would be realized by this court retaining
14 pendent jurisdiction, the interests of fairness and comity weigh strongly in favor of allowing the
15 state courts the first opportunity to resolve plaintiff's medical malpractice claim.  This court thus
16 will recommend declining the exercise of jurisdiction over this claim, without prejudice to
17 plaintiff's refiling it in state court.

18        Accordingly, IT IS HEREBY RECOMMENDED that:

19        1.  Defendant's March 14, 2005 "Motion For Summary Judgment" be denied as
20 to plaintiff's Eighth Amendment claim; and

21        2.  Plaintiff's state medical malpractice claim be dismissed without prejudice to
22 refiling in state court.

23        These findings and recommendations are submitted to the United States District
24 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fifteen
25 days after being served with these findings and recommendations, any party may file written
26 objections with the court and serve a copy on all parties.  Such a document should be captioned

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within five days after service of the objections.  The parties are advised
3  that failure to file objections within the specified time may waive the right to appeal the District
4  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
5  DATED:  March 21, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

---

1
wils2169.57